IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

LONNIE MURPHY                                                                                           PLAINTIFF

VS.                                      CASE NO.  4:04CV00661 JMM

ARKANSAS DEPARTMENT OF CORRECTION                                      DEFENDANT

**ORDER**

Pending before the Court are defendant's Motion for Summary Judgement and Motion to Strike.  For the reasons stated below, the Motion for Summary Judgment is denied and the Motion to Strike is granted.

Plaintiff, an African American, brought this lawsuit contending that he was discharged from employment by the Arkansas Department of Correction in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* based upon retaliation, race and gender.[1]

Defendant contends that plaintiff has failed to present a *prima facie* case of discrimination or to rebut its nondiscriminatory reason for plaintiff's determination.  Defendant states that it terminated plaintiff based upon allegations, and a subsequent investigation, which presented proof that plaintiff had (1) stolen money from an inmate and (2) written incorrect reports regarding the alleged theft.

---

[1] Plaintiff concedes that his retaliation and gender claims should be dismissed, and they are so dismissed.

1

I. *Facts*

Plaintiff was hired by the Arkansas Department of Corrections in January of 1992 as a Correctional Officer. He was promoted to Lieutenant at the Tucker Unit of the Arkansas Department of Corrections. At the time of plaintiff's termination, David White was the Warden at the Tucker Unit.

Derrick Scott is an inmate and at the time of the incident resulting in plaintiff's termination, was housed at the Tucker Unit. On July 27, 2003, plaintiff along with Sergeant Kenneth Plummer conducted a shakedown of Scott and discovered a large amount of cash in Scott's sock. Possession of cash is a violation of prison policy.

Plaintiff completed a Confiscation Form stating that $1,350.00 was confiscated at 1:15 p.m. and that the largest bills confiscated were in fifty dollar denominations. The Chain of Custody form signed by plaintiff stated that he had possession of the money from 1:15 p.m. to 2:45 p.m. before turning it over to Officer Kelley. Plaintiff also completed a 005 form and a major disciplinary form against Scott on July 27, 2003 regarding the confiscation of money in which he stated that plaintiff, Plummer, Captain McDonald, and Kelley counted the confiscated money and that the money totaled $1,350.00.

Allegations were raised that the amount of money confiscated from Scott was actually $1,850.00 and that plaintiff had stolen $500.00 of the confiscated money.

White requested an internal investigation by the Internal Affairs Division into the allegations regarding the theft. Charles Lanehart, an Internal Affairs investigator conducted the investigation into Scott's allegations. Karen Clark, a polygraph examiner for the Arkansas State Police administered polygraph exams to both Scott and plaintiff regarding the allegations of

theft. Scott passed the polygraph examination. Plaintiff did not.

The investigation was completed in January 2004 and based upon the results of the Internal Affairs investigation, White determined the evidence presented supported the allegations that plaintiff stole $500.00 of the confiscated money and falsified his written statements to cover it up.[2]

In February of 2004, White terminated plaintiff's employment with the Department of Corrections for being in violation of AR 2225 Employee Conduct Standards.

On May 3, 2005, the Board of Review reversed a decision of the Arkansas Appeal Tribunal and found that the plaintiff was not terminated due to misconduct connected with dishonesty entitling plaintiff to unemployment benefits.[3]

In 2002, White took a picture of the Emergency Response Team which was composed of a number of African American officers and placed it on the wall in the front office with the notation, "Where's my chicken?" White later removed the photograph and apologized to any persons it may have offended.

II. *Disputed Facts*

There is some dispute over whether plaintiff was ever left alone with the confiscated cash. Plummer told the investigators from Internal Affairs that he took Scott to the infirmary and that

---

[2] Plaintiff's objection to use of this report is without merit as this report is not being offered for the truth of the matter asserted and thus would not be in violation of Federal Rule of Federal Procedure 802.

[3] Plaintiff's assertion that this decision is *res judicata* on the issue of whether plaintiff stole the $500.00 in question is without merit. The Court is not making, and will not make at trial, a finding that plaintiff did or did not commit theft. The issue before the Court is whether White had a reasonable basis for making the decision to terminate plaintiff or if that decision was affected by plaintiff's race.

he did not know where plaintiff was during this time, but that he was probably in the area.

Plaintiff testified that he left Plummer and the inmate to make a telephone call to Kelley regarding the discovery of the case and then met Captain McDonald, one of his supervisors, in the hallway where he showed her the confiscated money.  He also testified that he and Plummer escorted Scott to the infirmary with McDonald where the money was counted by McDonald and Murphy totaling $1,350.00.

There is also a dispute over whether other white officers were treated differently than plaintiff for comparable offenses.

Plaintiff testified that Venita King, a white female, Terry Childress, a white male, and Sergeant Robinson, a white male, violated ADC regulations regarding the use and possession of tobacco resulting in a reprimand for King, probation for Robinson, and no action for Childress. He stated that possession of contraband such as tobacco was punishable by written reprimand, suspension or discharge.[4]  He also testified that Margaret Fannin, a white female, was living with an ex-inmate in violation of ADC regulations and that she was not disciplined.

White testified he was told of a female employee who was dating an ex-inmate and that the employee was not disciplined because she did not know it was in violation of department regulations.  He also testified that his memory of the smoking incident with King involved an inmate smoking in King's presence, but that she was unaware that the inmate was smoking.  He stated that he did not ask for an investigation into this incident.

---

[4]This testimony is supported by an exhibit to the deposition testimony of plaintiff in support of his response to the pending motion.

III. *Analysis*

Summary judgment is appropriate when there is no genuine issue of material fact and the dispute may be decided solely on legal grounds. *Iowa Coal Min. Co. v. Monroe County*, 257 F.3d 846, 852 (8th Cir.2001); Fed. R. Civ. P. 56. The initial inquiry is whether there are genuine factual issues that can be properly resolved only by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The burden is on the moving party to show that the record does not disclose a genuine dispute on a material fact. *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399 (8th Cir.1995).

At the summary judgment stage in an employment discrimination action, in the absence or direct evidence of racial or ethnic discrimination, an employee must produce sufficient circumstantial evidence of illegal discrimination under the *McDonnell Douglas* paradigm, specifically, by presenting a *prima facie* case of intentional discrimination plus sufficient evidence that one or more of the employer's proffered nondiscriminatory reasons is a pretext for unlawful discrimination. *Griffith v. City of Des Moines*, 387 F.3d 733 (8th Cir. 2004).

Under the burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792, 801-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff must first establish a prima *facie case* of discrimination to establish a claim under Title VII. *Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1046 (8th Cir. 2002). Once the plaintiff does this, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason. *Id.* If the employer satisfies this burden, the burden of production shifts back to the plaintiff to demonstrate that the employer's proffered reason is pretext for unlawful discrimination. *Id.* To establish that an

employer's legitimate, nondiscriminatory reason is pretext for discrimination, an employee must offer evidence for a reasonable trier of fact to infer discrimination.  *Matthews v. Trilogy Communications, Inc.*, 143 F.3d 1160, 1165 (8th Cir.1998).

Because plaintiff did not present direct evidence that any of the adverse employment actions were taken because of his race,  the McDonnell Douglas burden shifting test applies.[5] *Griffith v. City of Des Moines*, 387 F.3d 733, 736-37 (8th Cir. 2004).   To establish a *prima facie* case, plaintiff must establish that he (1) is a member of a protected class, (2) was qualified to perform his job, (3) suffered an adverse employment action, and (4) was treated differently from a similarly situated employee outside his protected class.  *Tolen v. Ashcroft*, 377 F.3d 879, 882 (8th Cir. 2004).

There is no dispute over the first three elements of the *prima facie* case.  Plaintiff and defendant agree that plaintiff is a member of a protected class who was qualified to perform his job, and who was terminated which is an adverse employment action.  The dispute is over whether plaintiff was treated differently than other employees who were similarly situated.

At the *prima facie* stage, a low-threshold standard applies for determining whether employees are similarly situated.  *Rodgers v. U.S. Bank*, 417 F.3d 845 (8th Cir. 2005).   Under the

---

[5] The Court finds that the remark regarding the photograph of African American officers and "chicken" is not direct evidence of racial discrimination.  For the purposes of this motion, the finding that there is no direct evidence of racial discrimination is made without consideration of Dora Wood's statement.  Defendant objected to Wood's statement on several grounds including hearsay.  The Court does not consider Wood's statement as hearsay as White is an employee of the defendant who can speak for the defendant and, as such, would be a party defendant.  The Court grants defendant's Motion to Strike based upon plaintiff's failure to name Wood as a witness in a timely manner.   This decision is applicable to the pending motion only and is not *res judicata* to defendant's pending motion *in limine* which seeks to preclude Wood's testimony at trial.

low-threshold standard, the plaintiff must show that he, King, Childress, Robinson, and Fannin were "involved in or accused of the same or similar conduct and [were] disciplined in different ways." *Id.* (quoting *Williams v. Ford Motor Co.*, 14 F.3d 1305, 1308-09 (8th Cir.1994)). Giving plaintiff the benefit of the doubt at this level, the Court finds that he has established a *prima facie* case.

At the pretext level of Title VII analysis, plaintiff must meet a rigorous test to establish that he and the employees outside of his protected group were similarly situated in all relevant respects. *Id.*

The Court finds that plaintiff has come forward with sufficient disputed evidence to infer discrimination. While King, Robinson and Childress were not accused of taking confiscated money, they were accused of trafficking in contraband which is punishable by discharge and they were given reprimands or probation as opposed to being discharged. The Court finds that these violations are of comparable serious as to be probative evidence of pretext. *See Id.* at 854.

For the reasons stated above, the Motion for Summary Judgment is denied (#21) and the governments' Motion to Strike is granted (#35).

IT IS SO ORDERED THIS   24   day of May, 2006.

                                              James M. Moody
                                              United States District Judge